IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT LEROY LICKING,                    3:12-cv-00464-BR

        Plaintiff,                    OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.


RICHARD A. SLY
209 S.W. Oak Street
Suite 102
Portland, OR 97204
(503) 226-1227

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**LINDA S. ZISKIN**
Ziskin Law Office
P.O. Box 753833
Las Vegas, NV 89136
(503) 889-0472

　　　　　Attorneys for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**JORDAN D. GODDARD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2545

　　　　　Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Robert L. Licking seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this matter.

2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed his application for DIB on January 27, 2009. Tr. 19.  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on April 14, 2011.  Tr. 19.  At the hearing Plaintiff was represented by an attorney.  Plaintiff, lay witnesses Kathleen Polley and Bruce Burden, and a vocational expert (VE) testified at the hearing.  Tr. 19.  Kathleen Polley and Charles Burden submitted written statements.  Tr. 165-72, 203-04.

The ALJ issued a decision on April 26, 2011, in which he found Plaintiff was not entitled to benefits.  Tr. 16.  That decision became the final decision of the Commissioner on January 10, 2012, when the Appeals Council denied Plaintiff's request for review.  Tr. 1.

## BACKGROUND

Plaintiff was born May 12, 1953, and was 57 years old at the time of the hearing.  Tr. 51, 143.  Plaintiff completed a General Educational Development degree, carpenter's degree, masonry degree, and heavy-equipment degree.  Tr. 51-52.  Plaintiff has past relevant work experience as a dump-truck driver and construction driver.  Tr. 50-51, 64.

Plaintiff alleges disability since November 1, 2008, due to gastro-bloating syndrome and neck pain.  Tr. 40, 45-46, 53, 143.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 21-23, 25-27.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as

adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla of evidence but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

<u>**DISABILITY ANALYSIS**</u>

**I.   The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.

2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A

6 - OPINION AND ORDER

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since November 1, 2008, his alleged onset date, through December 31, 2009, his date last insured.  Tr. 21.

At Step Two the ALJ found Plaintiff has the severe impairments of abdominal bloating secondary to post-fundoplication syndrome and degenerative disc disease of the cervical spine.  Tr. 21.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 18.  The ALJ found Plaintiff can perform "less than the full range of medium work."  Tr. 24.  The ALJ found Plaintiff can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently balance; never climb ladders, ropes, or scaffolds; and occasionally perform overhead reaching. Tr. 24.

At Step Four the ALJ concluded Plaintiff was capable of performing his past relevant work as a dump-truck driver and construction driver through the last date insured.  Tr. 27. Accordingly, the ALJ found Plaintiff was not disabled at any time from the alleged onset date through the date last insured and, therefore, is not entitled to benefits.  Tr. 27.

8 - OPINION AND ORDER

## DISCUSSION

Plaintiff contends the ALJ erred when he improperly (1) rejected Plaintiff's testimony, (2) rejected the lay-witness testimony and statements of Kathleen Polley and Charles Burden, and (3) concluded at Step Four that Plaintiff was capable of performing his past relevant work.

## I.  Plaintiff's testimony.

Plaintiff alleges the ALJ erred when he failed to give clear and convincing reasons for rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra*, 481 F.3d at 750 (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are

insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The consistency of claimant's daily activities with the medical record is relevant when determining the claimant's credibility and may constitute a clear and convincing reason to reject a claimant's testimony.  *Smolen*, 80 F.3d at 1284.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but he concluded Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms are not credible "to the extent they are inconsistent with the [RFC]."  Tr. 24.

Plaintiff testified he cannot work due to his stomach disorder because he never knows when he will become bloated. Tr. 40-41.  Plaintiff testified eating garlic and onions triggers bloating episodes.  Tr. 52.  Plaintiff stated when an episode occurs, he is so bloated he looks like he is eight-months pregnant and is in such pain that it "feels like I'm having a heart attack."  Tr. 41, 42.  Plaintiff testified the only thing that relieves the bloating is hot/cold hydrotherapy that involves taking a hot bath and pouring cold water over his chest and stomach.  Tr. 42.  In a function report Plaintiff wrote he cannot travel more than twenty miles without another driver and without

being in close proximity to a bathtub.  Tr. 159.  Plaintiff
testified taking Reglan 10mg before breakfast and dinner helps
with the bloating, but he still becomes bloated if he eats garlic
or onions even when he takes Reglan.  Tr. 53.  Plaintiff
testified medications do not alleviate the pain.  Tr. 43.

Plaintiff also testified he has had neck problems for the
past 35-40 years and was only able to work as a driver until 2005
or 2006.  Tr. 48.  He stated:  "I still just drove in pain or
worked in pain . . . [b]ut then it got so severe that I just
couldn't do it anymore."  Tr. 47.

Plaintiff testified he owned his own trucking company and
had to hire someone to replace him as a truck driver because his
symptoms prevented him from driving.  Tr. 25.  When asked if he
closed his business due to his medical conditions or the economy,
Plaintiff stated both were factors.  He stated, however, it was
"more the economy" because he had to hire a driver to take his
place.  Tr. 45.

The ALJ noted the record reflects Plaintiff is able to bathe
and to dress independently, to go out for coffee, to drive, to
prepare simple meals, and to do laundry and the dishes.  Tr. 24,
155, 157-58.  The ALJ also pointed out that the record reflects
Plaintiff engaged in "a level of activity inconsistent with
complete disability."  Tr. 25.  The ALJ noted in February 2008
that Plaintiff reported hurting his lower back while lifting

11 - OPINION AND ORDER

scrap metal into a truck; in November 2008 Plaintiff stated he injured his shoulder while he was working on firewood and reported driving 200 miles that day to receive manipulative-therapy treatment; and in January 2009 Plaintiff reported increased neck and shoulder pain while working on his property. Tr. 25, 267, 249, 223.  The ALJ also noted the record reflects Plaintiff has "traveled to go hunting several times since the alleged onset date." Tr. 25. *See also* Tr. 61, 322-23, 520.  At least one of these trips occurred before the last date insured. Tr. 322-23.  The ALJ concluded even though "traveling and a disability are not necessarily mutually exclusive, [Plaintiff's] decision to go on hunting trips tends to suggest the alleged symptoms and limitations may have been overstated."  Tr. 25.

In assessing Plaintiff's credibility, the ALJ pointed out that the record reflects treatment has been generally successful in controlling Plaintiff's symptoms, including taking prescription Reglan for his GERD symptoms.  Tr. 25, 52-53, 250, 277, 319.  The ALJ noted the record reflects Plaintiff experienced episodes of bloating, pain, and burning in his abdomen when he did not take his medications.  Tr. 25, 250, 322-23.  The ALJ also noted Plaintiff "attributes his bloating to eating foods with onion or garlic powder . . . , [but he] does not present any reason why he cannot avoid these types of foods, or prepare his own meals without these foods." Tr. 25.

The ALJ concluded Plaintiff's alleged impairments were "present at approximately the same level of severity prior to the alleged onset date, throughout his date last insured."  Tr. 25. The ALJ noted Plaintiff reported gastro symptoms since 1991 and that the record does not reflect Plaintiff was hospitalized for his symptoms until after the last date insured.  In June 2010 Jill Walworth, M.D., found the symptoms associated with Plaintiff's stomach issues "are really not that different than they have been over the last 20 years."  Tr. 452.

The ALJ noted the record reflects Plaintiff had symptoms of neck pain prior to December 2008, but the symptoms did not require surgery until 2011.  Tr. 26.  The ALJ further noted Plaintiff testified he had neck pain on and off for 35 to 40 years and just worked in pain.  Tr. 26, 48.

The ALJ also noted Plaintiff "stopped working for reasons not related to his alleged disabling impairments" as reflected in Plaintiff's testimony that "he eventually stopped working due to a combination of the economy and his symptoms, but more because of the economy."  Tr. 25, 45.

On this record the Court concludes the ALJ provided clear and convincing reasons supported by substantial evidence in the record for finding Plaintiff's testimony not entirely credible as to the intensity, persistence, and limiting effects of his condition.  The Court, therefore, concludes the ALJ properly

13 - OPINION AND ORDER

discredited Plaintiff's testimony in part.

## II.  Lay-witness testimony.

Plaintiff contends the ALJ erred when he improperly rejected the testimony and written statement of Plaintiff's wife, Kathleen Polley, and the written statement of Plaintiff's brother-in-law, Charles Burden.[2]

### A.  Kathleen Polley

Polley testified at the hearing that Plaintiff's neck and back problems were so bad before his neck surgery that he had trouble turning his head and would sometimes drop a coffee cup after picking it up.  Tr. 55.  Polley testified Plaintiff has had digestive problems for over 20 years, and he looks like he is "nine months pregnant with twins" when he is bloated."  Tr. 56-57.  She testified Plaintiff's hot/cold hydrotherapy can usually relieve Plaintiff's bloating within four to five minutes, but sometimes it takes one to two hours.  Tr. 58, 59.  Polley also testified Plaintiff can go three to four weeks without a bloating episode.  Tr. 57.  Polley testified she and Plaintiff do not "go anywhere that we can't get to a hot bathtub."  Tr. 58.  In a written statement dated June 29, 2009, Polley stated Plaintiff

---

[2] Plaintiff contends the ALJ improperly rejected the testimony of "Mr. Burden" and cited to the written statement of Charles Burden.  Accordingly, the Court addresses Plaintiff's objection only with respect to the ALJ's consideration of the written statement of Charles Burden and not the live testimony of Bruce Burden.

can "do watering and walk short distances behind self propelled
mower.  He does laundry and dishes when he is well enough."  Tr.
167.  She also stated Plaintiff needs to be accompanied on trips
longer than 15 minutes.  Tr. 169.  Polley also stated Plaintiff
is unable to drive trucks because he has trouble shifting.
Tr. 172.

**B.  Charles Burden**

Charles Burden reported in a May 4, 2010, written statement:
"Many times I have seen [Plaintiff] have to leave the table and
have to spend many hours in the very hottest hydrotherapy he
could stand."  Tr. 203.  Burden stated Plaintiff, for reasons of
safety, "should not be driving long distances without having
someone with him."  Tr. 203.  Burden also stated Plaintiff, due
to his bloating episodes, was "often forced to call for a
replacement driver" and "had to hire people to work for him."
Tr. 204.

**C.  Discussion**

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so."  *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224
F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a
claimant's disability, must give full consideration to the

15 – OPINION AND ORDER

testimony of friends and family members.").

Although the ALJ's reasons for rejecting lay-witness testimony must be "specific," *Stout v. Comm'r, Soc. Sec., Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006), the ALJ need not discuss every witness's testimony on an individualized basis. *Molina*, 674 F.3d at 1114. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id. See also Valentine*, 574 F.3d at 690 (9th Cir. 2009).

Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 Fed. App'x 866 (9th Cir. 2012).

As to Plaintiff's third-party witnesses' testimony and statements, the ALJ found:

> [Plaintiff's] third party witnesses'
> observations appear to be generally
> consistent with [Plaintiff's] allegations and
> are credible to the extent it is probable
> they have reliably reported their
> observations and what they have been told.
> However, as discussed previously there are
> several reasons to question the credibility
> of [Plaintiff's] allegations.  In particular,
> the record reveals the claimant's overall
> activities and especially his traveling
> during the relevant period was not as limited

> as they have suggested.  Consequently,
> although their statements appear credible,
> their value is limited for arriving at a
> determination of [Plaintiff's] overall [RFC].

Tr. 26.

The Court has concluded the ALJ properly discounted Plaintiff's credibility, particularly with respect to Plaintiff's statements concerning the severity, persistence, and limiting effects of his impairments.  The testimony and written statement of Polley and the written statement of Burden generally repeat the properly discredited testimony of Plaintiff.  The Court, therefore, concludes on this record that the ALJ provided reasons germane to Polley and Burden supported by substantial evidence in the record for concluding their statements and testimony were of limited value to the ALJ's assessment of Plaintiff's RFC.

**III. Past Relevant Work.**

Plaintiff argues the ALJ erred by concluding at Step Four that Plaintiff is capable of performing his past relevant work. Plaintiff argues the ALJ should have proceeded to Step Five in which the ALJ would have concluded Plaintiff was disabled as of age 55 pursuant to the Medical-Vocational Guidelines (the "Grids").

The determination that a plaintiff can perform his past relevant work negates his argument that the ALJ erred in the application of the Grids.  *Crane v. Shalala*, 76 F.3d 251, 255

17 - OPINION AND ORDER

(9th Cir. 1996)(citing 20 C.F.R. Pt. 404, Subpt. P, App. 2; Grids apply when claimant cannot perform prior work).

Under 20 C.F.R. 404.1567(c) "medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." An individual capable of performing medium work can also do sedentary and light work. *Id.* "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. 404.1567 (b).

Although when assessing Plaintiff's RFC the ALJ found Plaintiff can perform "less than the full range of medium work," the ALJ concluded Plaintiff could perform modified medium exertional work. Tr. 24. The ALJ found Plaintiff can occasionally climb ramps and stairs, stoop, kneel, crouch, and

18 – OPINION AND ORDER

crawl; frequently balance; and never climb ladders, ropes, or scaffolds.  Tr. 24.  At Step Four the ALJ, therefore, concluded Plaintiff can perform his past relevant work as a dump-truck driver and construction driver because this work "did not require the performance of work related activities precluded by [Plaintiff's RFC]".  Tr. 22.

When evaluating Plaintiff's RFC of modified medium exertional work, the ALJ pointed out that the record reflects reports of Plaintiff lifting scrap metal into a truck, working on firewood, driving 200 miles in a day, and taking several hunting trips during the period of alleged disability.  Tr. 25. Plaintiff is also capable of performing routine daily activities such as bathing, dressing, driving, preparing simple meals, and doing laundry and dishes.  Tr. 24-25.

The record reflects examining physician, Terri Robinson, M.D., examined Plaintiff on August 28, 2009, and concluded Plaintiff (1) did not have any limitation as to the number of hours he could sit or stand in an eight-hour day; (2) did not need any assistive devices; (3) could lift or carry 25 pounds frequently and 50 pounds occasionally; (4) had postural limitations to frequent climbing, stooping, and crawling; and (5) had manipulative limitations to frequent reaching.  Tr. 290.

DDS[3] physician Martin Kehrli, M.D., similarly opined Plaintiff can perform medium exertional work with postural and manipulative restrictions limited to frequent climbing of ramps/stairs, ladders, ropes, and scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; and limited reaching. Tr. 292-99.

The ALJ gave the opinions of Drs. Robinson and Kehrli considerable weight because they were "generally consistent with the record." Tr. 27. As noted, however, the ALJ found Plaintiff had additional functional limitations based on Plaintiff's subjective complaints, which he included in his assessment of Plaintiff's RFC.

At the hearing the ALJ posed the following hypothetical to the VE:

> Assume we have an individual 57 years old
> with the equivalent of a high school
> education. He has the work history you just
> described limited to medium exertional level
> activities. Postural limitations: should
> never climb ladders, ropes, and scaffolds;
> occassionally climb ramps and stairs;
> frequently balance, and back to occasionally
> stoop, kneel, crouch, and crawl. I'll say
> occasional overhead reaching also.

Tr. 64-65.

The VE concluded an individual with those limitations would

_____

[3]  Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

20 - OPINION AND ORDER

be able to perform Plaintiff's past work as a dump-truck driver and a construction driver.  Tr. 27, 65.  The VE "specifically noted these jobs would not be precluded by the limitation of occasional overhead reaching."  Tr. 27, 65.

On this record the Court concludes the ALJ did not err when he determined (1) Plaintiff's RFC was "modified" medium exertional work; (2) Plaintiff was capable of performing his past relevant work of dump-truck driver or construction driver during the relevant period; and (3) Plaintiff was not disabled from the alleged onset date through the date last insured because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.


## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 7th day of October, 2013.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


21 - OPINION AND ORDER